W. J. OVEN, *Appellant,* vs. CHARLES M. AUSLEY, J. RONDEAU MILLER, T. P. STRICKLAND, O. P. HARVEY and GEORGE J. SULLIVAN, as members of and contituting the Board of County Commissioners of Leon County, Florida, *Appellees.*

143 So. 588.

Division A.

Opinion filed August 17, 1932.

*W. J. Oven* and *James Messer, Jr.,* for Appellant;
*Wm. Blount Myers,* for Appellee.

ELLIS, J.—In March, 1925, the Board of County Commissioners for Leon County, acting under the provisions of

Sections 1531, 1533 and 1534 Revised General Statutes of Florida 1920 (Sections 2309, 2311 and 2312 C. G. L. 1927), adopted a resolution providing for the issue of bonds in the sum of one million five hundred thousand ($1,500,000) dollars in denominations of one thousand ($1,000) dollars each and payable upon dates set forth in the resolution.

The resolution provided that the proceeds derived from the sale of the bonds should be apportioned to and expended on certain paved, macadamized or other hard surfaced roads to be constructed, or the construction thereof to be aided by the issue and sale of the bonds.

The roads to be constructed, or the construction thereof to be aided, were clearly described in the resolution and the amount to be apportioned of the funds to be raised by the sale of the bonds definitely set forth. Some of the roads described were state highways, others county roads. Among the roads to be aided or constructed was a county road "from the eastern limit of the City of Tallahassee on an extension of Park Avenue and Lafayette Street to connection with State Road No. 19." The amount allocated to that road was approximately fifty thousand ($50,000) dollars. To State Road No. 19 was allocated the sum of three hundred twenty-five thousand ($325,000) dollars.

An election was duly held under the provisions of the law in such cases provided and the proposed bond issue authorized by a vote of the electors of Leon County. The bond issue was validated by a decree of the court and such decree was on appeal affirmed by a divided Court. See Lewis v. Leon County, 91 Fla. 118, 107 South. Rep. 146.

The bonds were sold and the road from the eastern limit of the City of Tallahassee on an extension of Park Avenue and Lafayette Street to a connection with the State Road No. 19 was completed at an expense of approximately forty-four thousand nine hundred eighty-seven ($44,987.) dollars, leaving a balance in the hands of the bond trustees

from that allocation of five thousand and twelve and 80/100 ($5012.80) dollars.

In 1927 a special act of the Legislature, Chapter 13027, was enacted purporting to authorize the Board of County Commissioners of Leon County to expend the balance remaining from the sum allocated to the above described road that may be left on hand after its completion "for the construction of a road from such extension of Park Avenue to a point on State Road No. 1." That act was approved by the Governor in June, 1927.

In 1931, by chapters 15310 and 15312, the Legislature of Florida enacted statutes requiring that all "unexpended balances remaining after the construction of the roads designated and mentioned in said resolution of March 26, 1925," should "be transferred and turned over to the State Board of Administration to be used and applied by it to the payment of interest and sinking fund on the said issue of Leon County bonds." See Chapters 15310 and 15312 Acts 1931. The above were special and local acts.

The County Commissioners of Leon County have caused the bond trustees to transfer and deliver to the County Commissioners the unexpended balance of five thousand and twelve and 80/100 ($5,012.80) dollars and they propose to expend the fund in the construction of a road "from the extension of Park Avenue to Road 19 to a point on State Road No. 1, designated approximately as follows: * * in a subdivision lying just within or just east of the eastern limits of the City of Tallahassee, northerly or northeasterly to a point on State Road No. 1 about one mile east of Tallahassee, Florida."

A cross road from State Road 19 about four miles east of Tallahassee to State Road No. 1 has already been constructed. That road touches State Road No. 1 about three miles east of Tallahassee.

The appellant, W. J. Oven, a citizen and taxpayer of

Leon County, sought by bill in chancery exhibited in the Circuit Court for Leon County to restrain the Board of County Commissioners from expending the said balance on hand of five thousand and twelve and 80/100 ($5,012.80) dollars for such purpose and that they be required to turn the money over to the State Board of Administration for the purposes required by law or to apply the same to the payment of interest or into a sinking fund to be used for the retirement of the bonds issued.

The chancellor denied the application for a restraining order and dismissed the bill, from which order the complainant appealed.

The bill alleges that the proposed use of the unexpended balance by the County Commissioners for the declared purpose is an extravagant and useless expenditure; that the proposed construction of the road will include an overhead crossing over the tracks of the Seaboard Air Line Railway at an approximate cost of five thousand dollars, which is the equivalent of a one mill tax on the property of Leon County and will entail a heavy expense for maintenance.

There are three propositions contended for by appellant, aside from his commendable attitude as a citizen of the county in endeavoring to preserve a high standard of the county's sense of legal obligation to the owners of its bonds and to prevent a seemingly extravagant, unnecessary and wasteful expenditure of the County's funds, which are: first, that the money raised by the exercise of the County's power of assuming an indebtedness which is payable only by taxation of the people's property cannot be lawfully applied to a purpose different from that for which the indebtedness was placed; second, that Chapter 13027, *supra*, is invalid, not only because the Legislature has no power to authorize such a diversion of public funds to illegal and wasteful purposes but the act is defective in

title, as no subject is expressed in it nor is the subject-matter of the act expressed in it and is meaningless, and third, that Chapters 15310-15312, *supra*, repealed Chapter 13027, *supra*, and directed the application of the said unexpended balance in conformity to law and a proper recognition of the county's obligation to observe its duty toward the holders of the County's bonds.

The order of the chancellor was erroneous.

In the first place, it is a violation of an elemental principle in the administration of public funds for those who are charged with the trust of their proper expenditure not to apply such funds to the purposes for which they are raised. When funds are raised by taxation for one purpose they cannot be diverted to some other purpose without legislative authority. See 15 C. J. 584; Harrell v. Woodberry, 62 Fla. 205, 56 South. Rep. 297; Northup v. Hoyt, 31 Or. 524, 49 Pac. Rep. 754; Allen et al. v. Board of Com'rs of Logan Co., 131 Okla. 41, 267 Pac. Rep. 860; Carroll v. Williams, 109 Tex. 155, 202 S. W. Rep. 504.

When an enforced contribution is exacted from the people by the power of taxation it is for a specific public purpose and the fund so raised is a trust fund in the hands of the legal custodians of it. There may exist circumstances in which the fund may be diverted to some other lawful purpose than that for which it was raised. Appropriation of public monies for certain public purposes involves the power of taxation and when the money is taken from a fund created by the levy of a tax and applied to some other purpose it is equivalent to the levy of a tax for such purpose. The limitation upon the rate of taxation is for the protection of taxpayers and to secure economy in the expenditure of public moneys.

It is evident from the allegations of the bill that more money was appropriated for the particular purpose than was necessary. If that surplus may now be taken and

applied to another purpose for which no tax was authorized it is obvious that the law thus evaded affords no protection whatever to taxpayers. See Union Pacific Railroad v. Dawson Co., 12 Neb. 254.

Something of the same thought was referred to in the case of Lewis v. Leon County, *supra*. See also Thompson v. Pierce Co., 113 Wash. 237, 193 Pac. Rep. 706; Pine v. Baker, 76 Okla. 62, 184 Pac. Rep. 445; Allen v. Board of Comm'rs, 131 Okla. 41, 267 Pac. Rep. 860; Wentz v. Board of Com'rs of Lincoln Co., 147 Okla. 173, 295 Pac. Rep. 599; Fletcher v. Howard, — Tex. —, 39 S. W. Rep. (2nd) 32.

The principle discussed seems peculiarly applicable to cases where the particular fund is raised by a vote of the electors. See Harding v. Board of Supervisors, — Iowa —, 237 N. W. Rep. 625.

In the case at bar the statute under which the bonds where issued, Sec. 2319 C. G. L. 1927 (Sec. 1541 R. G. S. 1920) expressly provides that ''The proceeds of all bonds sold for money shall be paid over to the county trustees, to be distributed by them for the purposes for which such bonds were sold, *and for no* other purposes'' (Italics mine).

The bill specifically alleges in this case that the resolution of the Board of County Commissioners declaring it to be expedient and for the best interests of the County to issue the bonds expressly declared that the proceeds should be apportioned and expended as set forth in the resolution which included the project already referred to in this opinion.

The bonds which were issued and sold under the provisions of the statute as called into effect by the resolution of the Commissioners and the election held thereunder constituted a contract between the County and the purchasers of the bonds which may be enforced by mandamus.

See Klemm v. Davenport, 100 Fla. 627, 129 S. R. 904; State ex rel. Dos Amigos v. Lehman, 100 Fla. 1313, 131 South. Rep. 533; Rountree v. State ex rel. Ga. Bond & Mtg. Co., 102 Fla. 246, 135 South. Rep. 888.

In California it was held that where an order for the issuance of bonds for bridges specifically designated the amounts to be expended on designated bridges and there was an unexpended balance left over it must be applied to the payment of the bonds and could not be used for the repair of other bridges. See Jenkins v. Williams, 14 Cal. App. 89, 111 Pac. Rep. 116.

In this view the issuing and sale of the bonds constituting a contract between the county and the purchasers of the bonds the act of the County Commissioners in endeavoring to divert a part of the fund for other purposes not authorized by the resolution which was jurisdictional and without which the election could not have been legally held and the bonds would have had no validity, was unauthorized and void, unless justified by Chapter 13027, Special Acts 1927, supra.

It is very doubtful if in these circumstances the act is valid, because, it impairs the obligation of a contract which the "people have, through the Legislature and at the polls, imposed * * upon themselves, and the consequences cannot be averted by the courts." Columbia County v. King, 13 Fla. 451, text 479.

It is difficult to perceive how the Legislature can avert the consequences by authorizing the use of any part of the fund for any purpose other than that for which the County in its contract with bond purchasers by resolution, vote of the electors and statutory provision, apportioned the fund.

Aside from the proposition that the title to the Act, Chapter 13027 supra, is fatally defective in not expressing the subject of the act, which was to authorize the expen-

diture of the unexpended balance upon another project not contemplated by the bond issue, the title merely stated that the act authorized the County Commissioners to "Expend any Unexpended Balance" etc. That language would have been applicable to the provisions of an act authorizing the expenditure of the unexpended balance in retiring the bonds issued, or the building of a jail, or in payment of the salaries of the commissioners. · The notice afforded by the title cannot be said to have been at all adequate to advise the Legislators or the people of the contents of the Act.

Without deciding whether the Act was valid or not, but assuming that it was within the power of the Legislature to authorize the expenditure of the unexpended balance, Chapters 15310 and 15312 Special Acts 1931, *supra,* repealed Chapter 13027, *supra,* and directed the use of such unexpended balance to a purpose consistent with the contract entered into between the County and the purchasers of the bonds.

The complainant is entitled to the relief sought. The order dismissing the bill was erroneous. The restraining order should have been granted.

The Court is greatly indebted to Judge Oven, the complainant, for the able brief filed by him which has been of great value to the Court.

The order is reversed with directions to reinstate the bill and grant the restraining order as prayed for therein,

BUFORD, C.J., concurs.

WHITFIELD AND DAVIS, J.J., concur specially.

BROWN, J., concurs in the conclusion.

TERRELL, J., not participating.

DAVIS, J. (concurring specially).—In 1925 the people of Leon County by an election authorized the issuance of $1,500,000 road bonds. The bonds were validated and

the roads contemplated by the original issue were substantially completed in accordance with the original program. Certain moneys were left over from the proceeds of the sale of the original bond issue and this fact led to the enactment in 1927 of a legislative Act which reads as follows:

"AN ACT to Authorize the Board of County Commissioners of Leon County, Florida, to Expend any Unexpended Balance out of a Part of an Issue of Bonds Dated July 1, 1925.

Be It Enacted By the Legislature of the State of Florida:

Section 1. That the Board of County Commissioners of Leon County, Florida, be and it is hereby authorized, out of an issue of bonds of said County dated July 1, 1925, to expend that part of the sum of Fifty Thousand Dollars appropriated for the construction of the roads from the eastern limit of the City of Tallahassee on an extension of Park Avenue and Lafayette Street to a connection with State Road No. 19, which may remain as a balance after the construction of such roads, for the construction of a road from such extension of Park Avenue to a point on State Road No. 1.

Sec. 2. This act shall become effective upon its becoming a law.

Approved June 5, 1927."

The Board of County Commissioners had originally constructed an extension of Park Avenue and Lafayette Street to a connection with State Road No. 19 out of the bond moneys. After so doing, a balance of the appropriation made for this purpose remained unexpended. The Legislature in 1927 thereupon passed an Act (Chapter 13027), authorizing this balance to be expended to connect State Road No. 19 with State Road No. 1. After this was done, the Legislature enacted Chapters 15310, 15311 and 15312, Special Acts of 1931.

Section 3 of Chapter 15310 and Section 3 of Chapter

15312 are to the effect that the State Board of Administration created by Chapter 14486, Acts of 1929, should be authorized to receive and administer all the unexpended balances of Leon County road funds after making certain specified advances provided for by law. Not until after these Acts of 1931 were enacted did the County Commissioners of Leon County undertake to exercise their authority under Chapter 13027, Acts of 1927, by attempting to use the above mentioned unexpended balance of the road bond moneys for the construction of a road from the extension of Park Avenue to a point on State Road No. 1.

The object of the bill of complaint filed by the appellant in the court below was to enjoin the expenditure of $5,012.80 unexpended balance remaining from the road bond moneys of Leon County for the construction of an extension of Park Avenue to a point on State Road No. 1 as authorized by the last portion of Section 1 of Chapter 13027, *supra.*

I concur in the conclusion that the injunction sought ought to have been granted, but I place my concurrence solely upon the view that the authority conferred by Chapter 13027, Acts of 1927, to expend road bond moneys for the construction of a road from the extension of Park Avenue to a point on State Road No. 1 was repealed by Chapters 15310 and 15312, Acts of 1931, *supra.*

There is nothing in the record to show that prior to the enactment of the 1931 statutes just referred to that the Board of County Commissioners of Leon County had entered into any valid contracts involving the expenditures of moneys under Chapter 13027, Acts of 1927, for the construction of a road from the extension of Park Avenue to the point on State Road No. 1. It was therefore in the power of the Legislature to repeal the authority conferred by the Act of 1927, and in my opinion

that authority was repealed by the 1931 Acts just referred to.

In the absence of any showing that by such repeal of the 1927 Act the obligation of any contract already entered into under its terms was thereby violated, the courts should give the 1931 repealing Acts their appropriate effect by recognizing and enforcing the rights of taxpayers who assert their objections to an unauthorized expenditure of public funds under pretended authority of an earlier Act that no longer is in effect.

BUFORD, C.J., AND WHITFIELD, J., concur.