Mr. Nevin J. Zimmerman Bay County Attorney Post Office Box 70 Panama City, Florida 32402
Dear Mr. Zimmerman:
On behalf of the Board of County Commissioners of Bay County you have asked substantially the following question:
1. Is the Board of County Commissioners of Bay County authorized by section 125.0104, Florida Statutes, to create a separate tax district for the benefit of a second subcounty district or amend the boundaries of the existing subcounty district?
2. Assuming Question One is answered affirmatively, what procedure should be used to create such a district and collect the tourist development tax?
In sum:
The Board of County Commissioners of Bay County may adopt an ordinance in accordance with the provisions of section 125.0104, Florida Statutes, creating a new countywide district or subcounty special district that is larger than the current district for the collection of tourist development taxes.
According to your letter, residents of an area of Bay County previously approved a referendum creating a subcounty special tourist development tax district pursuant to section 125.0104, Florida Statutes. Recently, the Board of County Commissioners has been approached with a request from another area of the county to amend the boundaries of the existing tax district or to create a second tax district to levy and collect the tourist development tax in this area also. To advise the board, you request this office's assistance in determining whether and how the goal of allowing bed tax collections in the second area of the county may be accomplished.
Section 125.0104, Florida Statutes, is the "Local Option Tourist Development Act."[1] The intent of the Legislature in adopting the act was to authorize counties to impose a tourist development tax on "every person who rents, leases, or lets for consideration any living quarters or accommodations in any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less[.]"[2] An exception to the tax exists for those who rent, lease, or let for consideration any living quarters or accommodations that are exempt according to the provisions of Chapter 212, Florida Statutes.[3]
The tourist development tax may only be levied and imposed pursuant to an ordinance containing a tourist development plan as set forth in section 125.0104(4)(c), Florida Statutes. Under the statute, the governing board of the county is authorized to levy the tax on a countywide basis or in a subcounty special district of the county,[4] and the electors of the designated area must approve the ordinance before it becomes effective.[5] Purposes for which the tourist development tax revenues may be used include acquiring, constructing and remodeling convention centers, sports arenas, coliseums, auditoriums, or museums; promoting and advertising tourism; funding convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies; or financing beach improvement, maintenance, renourishment, restoration, and erosion control.[6]
In Attorney General's Opinion 77-81, this office was asked to determine whether a county could create more than one subcounty special district or impose the tourist development tax in the county at one rate and impose an additional amount in a subcounty special district. That opinion concluded that a county could not create more than one subcounty special district within which to impose the tax and that "if a county decides to impose the tax, it must do so on a countywide basis or within a single subcounty special district which must embrace all or a significant contiguous portion of the county." This determination is based on the language of the act, which "contemplates and authorizes the creation of only one taxing district for purposes of imposing the tourist development tax within a given county[.]"
However, the language of section 125.0104, Florida Statutes, would not foreclose the county from adopting a new ordinance, in accordance with the requirements of the statute, that would create a new countywide district or new subcounty special district that is larger than the current district with the authority to collect the tax. Under this scheme the county would have to adopt a resolution at least 60 days prior to the enactment of any ordinance levying the tax establishing and appointing members of a new county tourist development council.[7] The council would have to prepare a plan for tourist development and submit the plan to the county commission for approval.[8] The county commission would be required to adopt the county plan for tourist development as part of the ordinance levying the tax and, thereafter, any substantial amendments to the plan could only be enacted by an affirmative vote of a majority plus one additional member of the commission.[9] The ordinance would have to be approved by a majority of the electors in the new countywide district or expanded subcounty district, excluding those voters from the existing tourist development tax district who previously approved imposition of the tax in their jurisdiction.[10]
While the statute authorizes the creation of a new tax district and the collection of the tourist development tax in this expanded area, the county may only use those taxes collected under the existing ordinance for the purposes designated in the original tourist development plan. It is the rule that tax revenues must be expended for the purposes for which they were collected, that is, funds raised by taxation for one purpose cannot be diverted to another use.[11] Thus, moneys collected pursuant to the original ordinance may only be used to accomplish the purposes set forth in the original plan for tourist development. These moneys may not be expended for the purposes set forth in the new ordinance and considered in the new tourist development plan.
Therefore, it is my opinion that the Board of County Commissioners of Bay County is authorized to adopt an ordinance in accordance with the requirements of section 125.0104, Florida Statutes, which would create a new countywide taxing district or enlarged subcounty district for the purpose of levying and imposing the tourist development tax in this expanded area.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 125.0104(1), Fla. Stat. (1995).
[2] Section 125.0104(3)(a), Fla. Stat. (1995).
[3] Id.
[4] Section 125.0104(3)(b), Fla. Stat. (1995).
[5] Section 125.0104(4)(a), Fla. Stat. (1995). And see, s.125.0104(6), Fla. Stat. (1995), prescribing referendum requirements for the ordinance imposing the tourist development tax.
[6] Section 125.0104(5)(a) and (b), Fla. Stat. (1995).
[7] Section 125.0104(4)(b), Fla. Stat. (1995). And see, s.125.0104(4)(e), Fla. Stat. (1995), prescribing requirements for the membership of the council, terms of office, meetings, etc.
[8] Section 125.0104(4)(c), Fla. Stat. (1995).
[9] Section 125.0104(4)(d), Fla. Stat. (1995).
[10] Cf., Op. Att'y Gen. Fla. 86-96 in which this office recognizes that the Board of County Commissioners of Monroe County levied a tourist development tax in a city following a countywide referendum pursuant to s. 125.0104, Fla. Stat., and then levied the tax on the remaining unincorporated areas of the county following a referendum which excluded the city three years later.
[11] See, e.g., Supreme Forest Woodmen Circle v. Hobe Sound Company, 189 So. 249 (Fla. 1939); Ops. Att'y Gen. Fla. 73-313 (1973) and 64-97 (1964).